**David SCHLOTHAUER, et al.**

v.

**Gregory GUSSE.**

**Civ. A. No. 86–3482Mc.**

United States District Court,
D. Massachusetts.

Jan. 7, 1991.

Carlton A. Lees, Westport, Mass. and Philip Beauregard, New Bedford, Mass., for plaintiffs.

Joel Lewin, Hinckley, Allen, Snyder & Comer, Boston, Mass., for defendant Gregory Gusse.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McNAUGHT, District Judge.

The plaintiffs, husband and wife, bought a piece of land in Westport, Massachusetts. An architect, August Schaefer, designed a home for them, at an estimated cost of $150,000. The builder they had hoped to use was not available, so, in July of 1985 they discussed their plans with the defendant, a contractor who was working on another home nearby. The plaintiffs are named David and Shirley Schlothauer. The defendant is Gregory Gusse.

On July 14, 1985, after reviewing the Schlothauers' plans, Gusse prepared a Proposal. His bid was $219,880 with an "upset price" of 239,640. This meant that, unless there were unusual or excessive changes by the Schlothauers, the house would be built at or under the upset price. There were allowances for certain items: carpets, well, appliances, electric fixtures, hardware and deck. This Proposal was rejected.

Next, on August 11, 1985 Mr. Gusse made a second proposal. This time the bid was $190,300. The "upset price" was $209,300. If the house were "brought in" for less than the bid, the Schlothauers would be credited with seventy percent of the savings, and Mr. Gusse with thirty. If the cost went over the upset price the owners would be responsible only for unusual changes or excessive changes, or for allowance items if they were greatly exceeded by the owner or a subcontractor. The allowances were: Well—$4,000; Appliances—$3,500; Fixtures—$1,000; Hardware—$1,000. The plaintiffs accepted the August proposal. The house was to be done the end of November of that year. It wasn't.

After construction began, the builder told the owners that he could do a different and better design within the cost determined. Change orders were executed in August and October. A solar heating system was done away with. Supposedly, this would result in a substantial saving of money. The kitchen plan was revised. The location of the foundation for the house had to be changed to avoid violation of flood plain regulations. There was, however, to be no change in the contract price.

Change Order No. 2 was signed on October 3rd, 1985. Many changes were made, including the addition of windows, enlargement of the frame of the house and the location of walls. Significantly, Mr. Gusse placed in Change Order No. 2 the words: "Add to upset price only $4,800", but these words were deleted at the demand of Mr. Schlothauer and the words "No change" were inserted. The plaintiffs didn't want the upset price to be raised.

During the month of September 1985 the Schlothauers agreed to sell their home in Attleboro, having been told by Mr. Gusse that the new home would be ready by Christmas. When it wasn't ready, they were forced to spend $4,047.83 for rentals of cottages and motel rooms.

Another crimp in the plans to build the home occurred in October of 1985 when an approved septic plan and water test had not been filed with the Building Inspector of

the town. This was not Mr. Gusse's responsibility. The architect Mr. Schaefer had hired an engineering firm to do the work and it had not been completed. Gusse fell behind.

He fell further behind in January of 1986, and this time the lag in work was definitely and completely attributable to him. He had financial troubles. He and his workers were absent frequently from the job for approximately four months. He never did finish the house. In early January Mr. Gusse conceded that substantial costs had been incurred by delays and changes "in your *and other* projects we are involved in". I conclude that his financial problems with other projects affected the Schlothauer situation adversely, and that it was a principal cause of the lengthy delay.

In March of 1986 (the 6th) Mr. Gusse submitted a billing for changes, in the amount of $19,648, stated that no further changes could be made, and that the project would be completed for the $209,-300 if no further changes were ordered. He suggests that the Schlothauers were responsible for $32,551.90 in changes made subsequently. This I do not find.

On May 5, 1986 Mr. Schlothauer and Mr. Gusse met. Schlothauer said that he would not pay Gusse. A couple of weeks later Gusse stopped working. Schlothauer hired another contractor, Dennis Talbot, to complete the work. Regrettably, I must find that the quality of Mr. Gusse's work was less than what it should have been. The main stairs had to be replaced, the parquet floor had lifted, and repainting had to be done.

I conclude that Mr. Gusse should receive less money than that to which he would have been entitled had he completed the job. The work would have been worth the "upset price" of $209,300. The Schlothauers offered evidence that the completion of the project reasonably cost them $55,000. If I accepted that evaluation, the value of Gusse's work would drop to $144,-500 (the amount which the Schlothauers paid him).

There is no question that Mr. Gusse breached his contract with the Schlothauers. He should have completed his work much sooner. My best estimate is that Gusse's breach of contract caused many months of delay in the project. There is also no question in my mind that the Schlothauers themselves, by their conduct, contributed to the delay. They were late in making finished goods selections (tile, carpeting, flooring and plumbing fixtures). There was also the factor mentioned hereinbefore of failure on the part of the engineering firm hired by Mr. Schaefer to file an approved septic plan. Changes after March 6th were valued by Gusse at $32,551.90, and the plaintiffs issued another change order list on April 21, 1986, which would have added to the cost.

The Schlothauers paid Gusse $144,000. If Gusse were to receive the upset price— the guaranteed maximum price ($209,300) the plaintiffs would still owe him $65,300. They actually paid $17,651.76 to complete the house and they should not have to pay that sum to Mr. Gusse. If he's entitled to the full upset price, they would still owe him $47,648.24. I conclude, however, that Mr. Gusse was responsible in major part for the delay in the completion of the project. The plaintiffs were unable to occupy a house which should have been ready for them in December of 1985, and which was not ready until half a year later. Part of the work of Mr. Gusse was performed in an unworkmanlike manner. These material breaches of contract dictate the result in this action. Mr. Gusse may not recover on his counterclaim because he failed to complete the contract substantially. It was his breach that caused great delay. It was his breach that required the Schlothauers to make repairs. It was his breach that required the plaintiffs to obtain outside help to finish the home so that they could occupy it reasonably.

The plaintiffs were not totally without fault. They were tardy in making finished goods selections, and they made, in the opinion of the court, unnecessary changes. Evidence the change order of April 21, 1986. I conclude that the Schlothauers materially breached their agreement also, and

should not receive affirmative relief in their request for damages from Mr. Gusse. They bear responsibility equally with Mr. Gusse for the rentals that they incurred. As for the work done by Mr. Talbot, the court cannot and does not determine whether much of the work was within the scope of the work originally to be done by Mr. Gusse. The mud room, the landscaping and the driveway material were not envisioned within the agreement executed by Mr. Gusse. There is no evidence in the case to warrant a finding of the value of work which should have been done by Gusse but was not.

I conclude that defendant's findings must be entered all around. The court will enter judgment for the defendant Gusse on the complaint and for the defendants Schlothauer on the counterclaim.